**Paul KAUS, Plaintiff,**

v.

**STANDARD INSURANCE COMPANY, Defendant.**

Civil Action No. 97–4048–DES.

United States District Court, D. Kansas.

Nov. 13, 1997.

Norman R. Kelly, Salina, KS, for Plaintiff.

Terry L. Unruh, Wichita, KS, for Defendant.

### MEMORANDUM AND ORDER

SAFFELS, Senior District Judge.

This matter is before the court on defendant's Motion for Summary Judgment (Doc.

20) on plaintiff's action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), to recover benefits under a group health plan issued by defendant. Also before the court is plaintiff's Motion to Vacate (Doc. 11) the May 1, 1997, scheduling order entered by United States Magistrate Judge Ronald C. Newman. For the reasons set forth below, defendant's Motion for Summary Judgment is granted and plaintiff's Motion to Vacate is denied as moot.

## I. BACKGROUND

The following facts are uncontroverted or, where controverted, construed in a manner most favorable to the plaintiff as the non-moving party.

Galichia Medical Group, P.A established and maintained a welfare benefit plan (the "Plan"), offering long-term disability benefits for its employees. As an employee of Galichia, plaintiff Paul Kaus was a participant in the Plan. His coverage under the Plan became effective October 1, 1995.

The Plan was funded by an insurance policy issued by Standard Insurance Company ("Standard"). The Plan gives Standard "full and exclusive authority" to "interpret" and "resolve" all questions arising in the "administration, interpretation, and application" of the Plan. The Plan states:

> Except for those functions which the Group Policy specifically reserves to the Policyowner, we have full and exclusive authority to control and manage the Group Policy, to administer claims, and to interpret the Group Policy and resolve all questions arising in the administration, interpretation, and application of the Group Policy.
>
> Our authority includes, but is not limited to:
>
> 1. The right to resolve all matters when a review has been requested;
>
> 2. The right to establish and enforce rules and procedures for the adminis-

tration of the Group Policy and any claim under it;

> 3. The right to determine:
>   a. Your eligibility for insurance;
>   b. Your entitlement to benefits;
>   c. The amount of benefits payable to you;
>   d. The sufficiency and the amount of information we may reasonably require to determine a., b., or c., above.
>
> Subject to the review procedures of the Group Policy, any decision we make in the exercise of our authority is conclusive and binding.

Pursuant to the Plan, long-term disability benefits ("LTD benefits") are not payable for any: "[D]isability caused or contributed to by a Preexisting Condition or medical or surgical treatment of a Preexisting Condition." A Preexisting Condition is defined as a:

> [M]ental or physical condition for which you have done any of the following at any time during the Preexisting Condition Period shown in the Coverage Features:
>   a. Consulted a Physician;
>   b. Received medical treatment or services; or
>   c. Taken prescribed drugs or medications.

The Preexisting Condition period is the "90-day period just before your insurance becomes effective."

On April 5, 1996, Mr. Kaus applied for LTD benefits under the Plan. Mr. Kaus maintained that he became unable to work as of February 20, 1996, due to "severe depression." He asserted that this condition prevented him from working at his occupation because he was "severely depressed due to job situation changes and surgeries with related open incision." [1]

Mr. Kaus's medical records reflect problems with depression dating back to 1992, when he was treated by an associate of Dr.

---

**1.** Plaintiff also submitted a claim for disability benefits based on Kallman's Syndrome. Defendant denied this claim because plaintiff received medical treatment and services for this condition during the Preexisting Condition Period. Plaintiff does not challenge this denial.

Norris, Dr. Alan K. Wardel. Dr. Norris assumed care for plaintiff in July 1995. Mr. Kaus's medical records also indicate that he was experiencing on-going health problems related to Kallman's Syndrome, as well as health problems related to a penile implant that was not healing properly. As a result of various health problems resulting from Kallman's Syndrome, plaintiff has had penile implants in the past, at least one of which had been removed because of medical complications. On September 15, 1995, Dr. Norris prescribed Valium. On September 21, 1995, Dr. Norris reported that plaintiff's "depression continues to be somewhat of a problem."

On November 2, 1995, Dr. Norris reported that "the patient has experienced a lot of anxiety, and feels a depression. He has been taking Valium 5 mg po tid during the bad times, and is here today to discuss getting on some anti-inflammatory therapy." On November 17, 1995, Dr. Norris reported "his depression seems improved."

Standard denied Mr. Kaus's claim for LTD benefits on July 24, 1996, alleging his medical records reflected that his disability condition was caused or contributed to by a preexisting condition. On September 26, 1996, Mr. Kaus requested that Standard review its decision denying his claim for LTD benefits. In support of his request, Mr. Kaus offered a letter from Dr. Norris, dated October 17, 1996. In that letter, Dr. Norris confirmed that Mr. Kaus was prescribed Valium during September 1995, and that on September 21, 1995, he diagnosed Mr. Kaus with "depression" that continued to be "somewhat of a problem." Dr. Norris stated, however, that he prescribed Valium "in hopes that it would help him sleep and improve his healing." He also stated that in referring to "depression" he was referring to "situational depression surrounding his health problems at that time." He further stated that plaintiff's psychological symptoms changed in late October and early November 1995, and that he felt at that time plaintiff was suffering from "major depression."

Mr. Kaus's claim was forwarded to Standard's Quality Assurance Unit for review. By letter dated October 29, 1996, Mr. Kaus was again informed that he could submit additional information in support of his claim. Although Mr. Kaus's counsel sent a letter dated November 5, 1996, concerning Mr. Kaus's claim for benefits, no new information was provided to Standard. Standard's Quality Assurance Unit reviewed all of the available medical records in Mr. Kaus's claim file, including the letter by Dr. Norris dated October 17, 1996, and concluded that Standard's denial of Mr. Kaus's claim due to the existence of a preexisting condition was proper. On November 29, 1996, Mr. Kaus requested clarification of the review decision by the Quality Assurance Unit. Standard replied by letter of December 20, 1996, in which Standard's employee, Jane B. Beyer, identified the preexisting condition language of the policy and stated that the policy does not require that diagnosis of the disabling condition be made during the investigation period.

## II. SUMMARY JUDGMENT STANDARD

A court shall render summary judgment upon a showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The rule provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The substantive law identifies which facts are material. *Id.* at 248, 106 S.Ct. at 2510. A dispute over a material fact is genuine when the evidence is such that a reasonable jury could find for the nonmovant. *Id.* "Only disputes over facts that might properly affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The movant has the initial burden of showing the absence of a genuine issue of material fact. *Shapolia v. Los Alamos Nat'l Lab.,* 992 F.2d 1033, 1036 (10th Cir.1993). The movant may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*

*v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The movant need not negate the nonmovant's claim. *Id.* at 323, 106 S.Ct. at 2552.

Once the movant makes a properly supported motion, the nonmovant must do more than merely show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). The nonmovant must go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553 (interpreting Fed. R.Civ.P. 56(e)). Rule 56(c) requires the court to enter summary judgment against a nonmovant who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof. *Id.* at 322, 106 S.Ct. at 2551. Such a complete failure of proof on an essential element of the nonmovant's case renders all other facts immaterial. *Id.* at 323, 106 S.Ct. at 2552.

A court must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence. *See, e.g., United States v. O'Block,* 788 F.2d 1433, 1435 (10th Cir.1986) (stating that "[t]he court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues"). The court's function is not to weigh the evidence, but merely to determine whether there is sufficient evidence favoring the nonmovant for a finder of fact to return a verdict in that party's favor. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510. Essentially, the court performs the threshold inquiry of determining whether a trial is necessary. *Id.* at 250, 106 S.Ct. at 2510.

## III. DISCUSSION

■ ERISA gives a plan beneficiary the right to judicial review of benefit denials. 29 U.S.C. § 1132(a)(1)(B). In *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989), the Supreme Court held that "a denial of bene-

fits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." If the plan gives the administrator discretionary authority, the arbitrary and capricious standard applies. *Id.* In this case, the Plan excludes from coverage any "disability caused or contributed to by a Preexisting Condition or medical or surgical treatment of Preexisting Condition." The Plan also expressly gives defendant discretion to determine a claimant's entitlement to benefits. Thus, under *Firestone,* the court must uphold defendant's decision to deny Mr. Kaus benefits unless it was arbitrary and capricious.

■ Plaintiff points out that an inherent conflict of interest arises where, as here, an insurance carrier both issues a policy and administers it. In light of this conflict, plaintiff suggests the court should apply a less deferential standard when reviewing defendant's decision to deny benefits. In *Chambers v. Family Health Plan,* 100 F.3d 818 (10th Cir.1996), the Tenth Circuit clarified the standard of review appropriate for cases in which a conflict of interest is present. The appropriate standard in such cases is the "sliding-scale" approach, under which "the reviewing court will always apply an arbitrary and capricious standard, but the court must decrease the level of deference given to the conflicted administrator's decision in proportion to the seriousness of the conflict." *Chambers,* 100 F.3d at 825.

■ Plaintiff contends that summary judgment is not appropriate here because the United States magistrate judge denied his right to conduct discovery on various issues in this case. Plaintiff requests that the court grant his motion to vacate and permit discovery pursuant to Fed.R.Civ.P. 16(b), as well as allow him to supplement his response after conducting discovery. He argues that the court should consider evidence not part of the administrative record, of health problems other than depression in determining whether the administrator's decision was arbitrary and capricious. Defendant replies that there is no relevant discovery beyond the plan

document and administrative record in this cases, both of which have been provided to plaintiff, and that the court should not consider evidence which was not part of the administrative record.

Plaintiff relies on *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 638–42 (5th Cir.1992), in arguing for the presentation of evidence not in the administrative record. In that case, the Fifth Circuit held that while a district court should evaluate an administrator's fact findings regarding the eligibility of a claimant based on the administrative record, the court may look to evidence which is not part of the administrative record in reviewing the administrator's interpretation of the plan. *Wildbur*, 974 F.2d at 642. Plaintiff argues that since he was disallowed discovery, a conflict of interest must be presumed which "directly affected" the defendant's decision. Plaintiff's reliance on *Wildbur* is mistaken. Plaintiff presents no evidence compelling a finding of ambiguity regarding the terms of the ERISA Plan. Indeed, the terms of the Plan appear quite explicit. Furthermore, plaintiff's concerns about the effects of the conflict of interest on defendant's interpretation of the plan are adequately accounted for in the "sliding-scale" standard of review applicable in such cases.

■ Plaintiff also contends that this case involves "exceptional circumstances" which would allow the court to review evidence not presented to the plan administrator. He cites *Quesinberry v. Life Ins. Co. of North Am.*, 987 F.2d 1017, 1027 (4th Cir.1993), in support. Plaintiff recognizes that *Quesinberry* involved a *de novo* review, but insists the same reasoning would apply in this case. The court disagrees. The Tenth Circuit addressed this argument in *Chambers* and made it clear that the "exceptional circumstances" exception does not apply to review under an arbitrary and capricious standard. 100 F.3d at 824. See *Sandoval v. Aetna Life and Cas. Ins. Co.*, 967 F.2d 377, 380 (10th Cir.1992) ("In determining whether the plan administrator's decision was arbitrary and capricious, the district court generally may consider only the arguments and evidence before the administrator at the time it made that decision.").

■ As an alternative argument in support of his request for additional discovery, plaintiff suggests his claim was initially approved by defendant, but then arbitrarily and capriciously denied. Plaintiff refers the court to a letter by Steven J. Leach, in which he states "The medical information seems to support approving the claim for either condition (i.e. either Kallman's syndrome or depression)." Mr. Leach's letter also sought approval by a supervisor, plaintiff states, and this approval was subsequently obtained. Plaintiff also points out that this written exchange occurred "after defendant had received the applicable medical records." Plaintiff argues he should be allowed to seek additional information concerning this "substantial admission."

The court is not convinced of the significance of defendant's internal colloquy. Mr. Leach's June 5, 1996, "letter" is more accurately characterized as an internal memo by a benefits analyst evaluating the status of plaintiff's claim and the medical records received. Based on the records received at the time, Mr. Leach suggested approval of a claim for benefits related to depression. His supervisor's agreement, however, was expressly subject to determining that plaintiff's condition was not preexisting. That the issue was not fully resolved at that time is also clear from senior disability analyst Phil Derby's June 11, 1996, memorandum to Mr. Leach stating "Since we have confirmed pre-x is still an issue, we need to wait until all records are reviewed ...." It would be improper to characterize these evidentiary scraps of defendant's internal decision-making process as a "substantial admission" requiring further discovery in contravention of *Chambers*.

■ Plaintiff further contends that certain procedural improprieties affected defendant's decision to deny plaintiff's claim. He argues that a December 20, 1996, letter by Jane B. Beyer was improper and denied him the opportunity for full and fair review. Plaintiff also contends the letter referenced Plan provisions which were not "pertinent." As a result, plaintiff suggests the defendant's denial decision should be set aside, or alterna-

tively, that full discovery should be permitted.

■ Ms. Beyer's letter was in response to plaintiff's November 29, 1996, letter requesting further clarification of the independent review by defendant's Quality Assurance Unit. In his letter, plaintiff requested identification of the policy provision that provides for exclusion if a "medical condition or symptoms for which Mr. Kaus was seen and treated during the investigation can be medically linked to the present disabling condition." In her response letter, Ms. Beyer attempted to explain, albeit somewhat unclearly, the preexisting condition language of the policy which provides that where a condition, as defined in under the policy, contributes to a disability, coverage for the disability is excluded under the terms of the Plan. The court is not convinced that this letter is a "procedural defect" or that it somehow "illegally added conditions to eligibility." At most, the letter is nothing more than Ms. Beyer's apparently unsuccessful attempt to define the "caused or contributed to" language of the policy. Nevertheless, even if the letter could be characterized as a "procedural defect", its existence provides insufficient reason for the court to permit further discovery.

The court now turns to plaintiff's claim that defendant's decision to deny long term disability benefits was arbitrary and capricious. The Tenth Circuit has indicated that "lack of substantial evidence and a mistake of law would be indicia of arbitrary and capricious actions and thus may be subsumed under the arbitrary and capricious label .... Other potential indicia of arbitrary and capricious actions include bad faith or conflict of interest by the fiduciary." *Sandoval,* 967 F.2d at 380 n. 4 (citations omitted). Plaintiff does not argue that defendant made a mistake of law, but he does advance several reasons why he believes defendant's decision to deny him benefits was arbitrary and capricious.

■ Plaintiff first contends that defendant's decision was improperly influenced by its conflict of interest. Although a financial conflict of interest clearly existed in this case, there is no evidence that defendant pres-

sured its staff for the purpose of denying coverage. Nor is there any evidence that the review process was influenced by considerations of cost or other considerations of profit. "[A]n insurance company subject to state regulations is deemed to be an adequate fiduciary for the purpose of reviewing claim denials." *Healthcare America Plans, Inc. v. Bossemeyer,* 953 F.Supp. 1176 (D.Kan.1996) (citing *Motley v. Metropolitan Life Ins. Co.,* 834 F.Supp. 1272, 1281 (D.Kan.1993)). Moreover, "such companies are deemed by ERISA to be capable of carrying out a full and fair review of their decisions to deny benefits, even in situations where a conflict of interest is found to exist." *Id.*

Plaintiff also argues defendant's decision was arbitrary and capricious because defendant denied the claim based on conditions not in the policy. This argument refers to Ms. Beyer's letter. As stated above, this letter, in which Ms. Beyer identified the preexisting condition language of the policy, was in response to plaintiff's request for clarification of the independent review conducted by defendant's Quality Assurance Unit. This letter will not be considered in the court's analysis as it represents evidence not part of the administrative record. The court notes, however, that it is not convinced by plaintiff's argument that Ms. Beyer improperly interpreted or applied the Plan's provisions regarding the definition of a preexisting condition, especially considering defendant's express discretion to interpret the terms of the Plan.

■ Finally, plaintiff claims defendant's decision was arbitrary and capricious because defendant refused to recognize a reasonable explanation by Dr. Norris regarding the inadvertent reference to depression in his September 21, 1995, office note. The court disagrees. There is no evidence that defendant ignored Dr. Norris' explanation, only that defendant chose not to credit the explanation enough to outweigh what it considered to be conflicting information. This does not establish, however, that the decision was arbitrary and capricious.

The court has reviewed the evidence submitted and finds no genuine issue of material

fact to preclude summary judgment. The court has also considered the law and concludes that despite the limited conflict of interest under which the defendant made its decision on plaintiff's claim, defendant's actions were reasonable. The Court cannot find, on the evidence before it, that defendant's decision was arbitrary and capricious under the standard of deference set forth in *Chambers*.

**IT IS THEREFORE BY THE COURT ORDERED** that defendant's Motion for Summary Judgment (Doc. 20) is granted.

**IT IS FURTHER ORDERED** that plaintiff's Motion to Vacate (Doc. 11) is denied as moot.