Angela S. NAGELE, Plaintiff,

v.

ELECTRONIC DATA SYSTEMS CORP., Electronic Data Systems Corporation Long Term Disability Plan and Metropolitan Life Insurance Company, Defendants.

No. 99–CV–498S(F).

United States District Court,
W.D. New York.

April 27, 2000.

**96**

Webster Szanyi, LLP, (Michael P. McClaren, Buffalo, NY, of counsel), for Plaintiff.

Hodgson, Russ, Andrews, Woods & Goodyear, Electronic Data Systems, (Adam W. Perry, Buffalo, NY, of counsel), for Defendant.

Feldman, Kieffer & Herman, LLP, Metropolitan Life Insurance, (James J. Navagh, Buffalo, NY, of counsel), for Defendant.

## DECISION and ORDER

FOSCHIO, United States Magistrate Judge.

## JURISDICTION

This matter was referred to the undersigned for all non-dispositive pretrial matters by order of Hon. William M. Skretny dated September 16, 1999. It is presently before the court on Plaintiff's motion to compel discovery and for sanctions (Doc. # 18) filed February 10, 2000.

## BACKGROUND

Plaintiff filed this action on July 20, 1999 alleging four causes of action based on improper termination of long term disability benefits under the terms of an employee welfare long term disability benefits plan, pursuant to Section 501(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C § 1132(a)(1)(B), breach of fiduciary duty pursuant to 29 U.S.C. § 1104, and for breach of contract.[1] Specifically, Plaintiff alleges that Defendants improperly terminated her long term disability benefits under Defendants' Plan established by Defendant Electronic Data Systems Corporation ("EDS"), her former employer, and administered by Defendant Metropolitan Life Insurance Company ("MetLife").

Following treatment for injuries suffered in an automobile accident in 1994, Defendant was determined eligible for long term disability benefits under the Electronic Data Systems Corporation Long Term Disability Plan ("EDS Plan or the Plan"). However, in 1998,

---

1. Although not directly raised by the instant motion, Plaintiff's state law contract claims are preempted by ERISA. 29 U.S.C. § 1144(a); *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 288 (2d Cir.1992) (A state common law action which merely amounts to an alternative theory of recovery for conduct actionable under ERISA is preempted.) Moreover, Plaintiff's claim for breach of the Plan Administrator's fiduciary duty, 29 U.S.C. § 1104, is actionable under § 1132. Hence, for purposes of the instant motion, the court treats the action as one under ERISA § 1132(a)(1)(B).

MetLife determined Plaintiff was no longer eligible for such benefits based in part, according to Plaintiff, on the denial of her application for benefits under the Social Security Act, 42 U.S.C. §§ 401–432. Plaintiff represents and Defendants do not dispute that the decision of the Social Security Administration to deny Plaintiff benefits was recently vacated by this court and remanded for reconsideration with instructions. Plaintiff's benefits were terminated in January, 1999.

Plaintiff served her First Set of Interrogatories dated September 21, 1999 on MetLife; MetLife served its answers and objections on November 29, 1999. Specifically, Plaintiff served 32 interrogatories exclusive of subdivisions; however, as MetLife did not object under Fed.R.Civ.P. 33(a) (absent court order or agreement of the parties interrogatories including subparts shall be limited to 25 in total) such ground for objection is deemed waived.[2]

Metlife's response to Plaintiff's motion was filed March 20, 2000. Affidavit of James J. Navagh, Esq., dated March 20, 2000 ("Navagh Affidavit") (Doc. # 21). Plaintiff's Reply Declaration in Further Support of Plaintiff's Motion ("Declaration of Michael M. McClaren, Esq. dated March 29, 2000") ("McClaren Declaration") (Doc. # 23) was filed March 30, 2000 along with Plaintiff's Reply Memorandum of Law in Further Support of Plaintiff's Motion (Doc.# 22). EDS filed a Declaration of David W. Neel, Esq., undated, ("Neel Declaration") (Doc. # 24) on April 3, 2000. MetLife filed its Second Memorandum of Law (Doc. # 25) on April 4, 2000. Oral argument was conducted on April 5, 2000. MetLife submitted a post argument letter of additional authority dated April 6, 2000 (Doc. # 28). Based on the following,

Plaintiff's motion is GRANTED, in part and DENIED, in part.

## FACTS[3]

Plaintiff was employed by EDS from April 1988 to December 1995 as an Education Coordinator performing primarily administrative tasks. On May 19, 1994, Plaintiff was injured when the vehicle driven by her husband in which she was a passenger was struck in the passenger side by another car traveling at an estimated 50 m.p.h. Plaintiff sustained several disc herniations, a rib fracture, bruises and contusions. Following the accident, Plaintiff attempted to return to full time employment at her job with EDS but was unable to do so because of chronic and severe pain.

Examining physicians reported that Plaintiff complained of chronic generalized pain and bodily weakness including skin discoloration from broken blood vessels. Affidavit of Michael P. McClaren, Esq., dated February 10, 2000 ("McClaren Affidavit") Exhibit D at 1, 5. One physician opined Plaintiff suffered from fibromyalgia.[4] *Id.* at 4. Another physician believed Plaintiff's condition was not based on any "significant cervical pathology," but that Plaintiff suffered from a "poly inflammatory disease" or "other form of diffused process" which could not be attributable to Plaintiff's neck. Exhibit D to McClaren Affidavit at 5. EMG and nerve conduction tests performed in 1997 failed to show any radiculopathy or entrapment neuropathy. *Id.* Plaintiff ceased her work at EDS in June 1995 and was subsequently diagnosed as suffering from fibromyalgia and recalcitrant myofacial pain syndrome.

While employed at EDS, Plaintiff was enrolled as a participant in the EDS Plan. Plaintiff elected to purchase Supplemental Long Term Disability coverage made avail-

---

**2.** Plaintiff also served interrogatories on EDS; however, the instant motion is directed only to MetLife. Further, although the parties failed to comply with Fed.R.Civ.P. 37(d) and Local Rule Civ.P. 37, as MetLife's objections indicate informal efforts to resolve the dispute would have proven largely futile, the court will proceed to the merits of the motion.

**3.** Taken from the pleadings and papers submitted in this action.

**4.** Fibromyalgia, also referred to as fibrositis, is the inflamation of fibers of the connective tissues of the body, commonly used to denote a condition, the symptoms of which include aching, soreness and stiffness with multiple tender points on the body, of unknown etiology. STEDMAN'S MEDICAL DICTIONARY (26th ed., 1995), at 650.

able to EDS employees under the Plan which provided an additional 10% of income replacement beyond the income replacement benefit available under the Plan's basic coverage. An employee eligible for coverage under the Plan receives benefits when such employee is unable to perform the material duties of her regular or a similar occupation as a result of a sickness or injury. Injury is defined by the Plan as an accidental bodily injury to an employee resulting in a loss covered by the Plan; sickness is defined as an illness or disease occurring to an employee resulting in such a loss. Benefits under the Plan become payable six months after an employee becomes disabled and for 24 months thereafter. Benefits as provided by the Plan, including supplemental long term disability benefits, are paid if an employee is then totally disabled. For the purpose of the first 24 month period of benefits, total disability is defined as the continuous inability to perform the material duties of an employee's regular or similar occupation. At the end of the 24 month period, benefits may be paid if the employee is then totally disabled. As defined by the Plan, totally disabled means the employee is then unable to perform any gainful occupation or employment for wage or profit for any employer. The Plan states that it is self funded through the EDS Employee Welfare Benefit Trust.

Section 6 of the Plan specifically grants to the Plan Administrator the "full discretionary authority" to interpret the Plan and to make benefit eligibility determinations. Further, the Plan provides that the Plan Administrator is the Benefits Administration Committee and that the powers of the Plan Administrator may be delegated to another person. Authority for making such determinations of eligibility for benefits under the Plan was delegated to MetLife by agreement between EDS and MetLife effective January 1, 1997. Neel Declaration, ¶ 3. Under the agreement, MetLife agreed to make, on a discretionary basis, determinations of eligibility for payment of benefits on claims submitted by EDS employees covered by the Plan and to provide advisory services to the Plan regarding its costs and operation. *Id.* The agreement also stated that benefits under the Plan were provided by EDS and not through any contract of insurance. Further, MetLife was compensated according to a fee schedule. Under an amendment to the agreement, effective January 1, 1998, MetLife assumed the role of ERISA Claims Fiduciary for the Plan, and agreed to exercise discretionary authority in providing "full and fair" determination of appeals by employees challenging denials of benefit eligibility claims submitted under the Plan. Neel Declaration, ¶ 3.

Plaintiff began receiving benefits under the Plan on December 26, 1995. MetLife determined that Plaintiff was no longer eligible for benefits on June 25, 1998 and EDS terminated her benefits on January 31, 1999. Plaintiff subsequently administratively appealed the termination, without success, and, on May 20, 1999, MetLife advised her that no further review was available under the Plan. Thus, although Plaintiff's initial eligibility for long term benefits in 1995 was determined by EDS acting as the then Plan Administrator, the termination of her benefits resulted from a decision made by MetLife then acting as Plan Administrator on behalf of EDS. Further, Plaintiff's administrative appeal of the termination was decided by MetLife.

Twenty-three of Plaintiff's interrogatories are at issue: Nos. 1, 2, 3, 5, 7, 10, 11, 13, 15, 16, 17, 19, 20, 23, 24, 25, 26, 27, 28, 29, 30, 31, and 32. The disputed requests and the corresponding bases of MetLife's refusals to answer are summarized as follows. Interrogatories Nos. 1 and 2 seek the identities of persons most knowledgeable about (No. 1) the decision to terminate Plaintiff's long term disability benefits, and (No. 2) the relationship between MetLife and EDS. Interrogatory No. 3 requests the identity of all individuals who participated in or who were consulted regarding Plaintiff's lack of qualification for such benefits. In addition to asserting by a preliminary general objection a lack of relevancy and non-specific burdensomeness, MetLife stated that the requested information was contained in documents provided in response to Plaintiff's document production request, in particular the claim file applicable to Plaintiff's case. MetLife's Responses to Plaintiff's First Set of Interrogatories, McClaren Affidavit, Exhibit C at

1–3. MetLife further responded by stating that to the extent the requested information pertained to current employees of MetLife, such persons "could be reached through undersigned counsel."[5] The answer also asserted that the addresses and telephone numbers of "other persons" involved in the decision, "if known [to MetLife] are contained in the [Plaintiff's] claim file." *Id.* Plaintiff contends that as none of the requested information is privileged and is needed by Plaintiff, it should be provided. McClaren Affidavit, ¶ 13.

Interrogatory No. 5 requests MetLife identify all documents "relied upon by MetLife" in deciding to terminate her long term disability benefits under the EDS Plan. MetLife asserted that the documents were protected against disclosure under the work-product doctrine and attorney-client privilege, nevertheless, MetLife also asserted that such documents included "appropriate sections of the Summary Plan Description, the Administrative Services Agreement executed by MetLife January 11, 1999 and the [Plaintiff's] Administrative Claim file" which MetLife was providing to Plaintiff contemporaneously. Plaintiff argues that for any unprovided documents subject to the Interrogatory, MetLife's asserted privilege objection was ineffective as no privilege log required by Fed.R.Civ.P. 26(b)(5) has been provided by MetLife. McClaren Affidavit, ¶ 15.

Interrogatory No. 7 asked MetLife to state whether Plaintiff had received long-term disability benefits in excess of "Basic Benefits" as defined in the "1998 Plan." MetLife responded that "to the extent [the requested information] exists," it was within the documents [Plaintiff's Administrative Claim file] produced to Plaintiff in response to Plaintiff's request. Plaintiff states she is entitled to a specific answer.

Interrogatory No. 10 requested MetLife state "the last date" Plaintiff was eligible to receive long-term disability benefits. MetLife objected that the question sought protected work-product and required consideration of evidence beyond the administrative claim file, and was therefore burdensome.

Plaintiff contends the objection is factually and legally without foundation. McClaren Affidavit, ¶ 20. Additionally, Plaintiff argues that a response should be directed as Defendants have provided different dates as to when they determined Plaintiff was no longer eligible for long-term benefits. McClaren Affidavit, ¶¶ 22, 23.

Interrogatory 11 asked MetLife to state whether the determination that Plaintiff was no longer disabled was based on a change in her medical condition and, if so, to describe such change and describe all documents it reviewed in making the determination. MetLife answered that its decision to terminate Plaintiff from long—term benefits under the Plan was based on the fact Plaintiff was found not unable to perform any gainful occupation or employment for wage or profit and the documents that had been reviewed in connection with the decision were contained in the Plaintiff's claim file produced to Plaintiff. Plaintiff contends such answer was nonresponsive to the question posed by the Interrogatory, *viz.*, whether the determination was based on a change in Plaintiff's medical condition as she had been receiving long term disability benefits for a substantial period of time prior to the disputed decision terminating them. McClaren Affidavit, ¶ 24.

Interrogatory No. 13 requested MetLife state whether its decision to terminate Plaintiff's benefits occurred during 1998. MetLife responded that the benefits were terminated effective January 31, 1999 and that, accordingly, the actual decision to terminate preceded such date and that, in any event, the actual date of the decision, albeit unknown, was irrelevant and immaterial. Plaintiff argues the actual date of decision is relevant, and that MetLife's failure to provide a more detailed response evinces a purpose to obstruct discovery. *Id.*, ¶ 26.

Interrogatories Nos. 15, 16, and 17 seek, respectively, the identities of the persons who made the termination decision and their employer, the compensation of each identified person, including whether they were entitled to payment of bonuses, and the name,

---

**5.** Although MetLife's answers were not signed by a corporate representative with personal knowl-

edge as required by Fed.R.Civ.P. 33, Plaintiff has not moved against them on this ground.

job title and position of members of the Plan Benefits Administration Committee at the time Plaintiff's benefits were terminated. MetLife objected that the information sought was irrelevant to the applicable standard for judicial review although the identities of employees involved in the termination decision were available through counsel. Plaintiff argues that the requested information is relevant to whether the decision makers, including committee members, suffered from a conflict of interest and that if any were former employees, counsel would not necessarily be able to provide access. *Id.*, ¶¶ 29, 31–34.

Interrogatory No. 19 asked MetLife to identify who received the premiums paid by Plaintiff for the Supplemental Long–Term Disability coverage at issue. MetLife refused to respond on the ground the request sought information irrelevant to the applicable standard of judicial review. Plaintiff contends the requested information is relevant, presumably to whether the decision maker may have suffered from a conflict of interest. *Id.*, ¶ 36.

Interrogatories Nos. 20 and 23 seek, respectively, the names, positions and job descriptions of the Plan's trustees at the time of the Plaintiff's benefits termination, and the identity of the persons involved in the denial of Plaintiff's appeal of the termination of her benefits.[6] MetLife's answer objected that the interrogatory called for disclosure of "legal reasoning" protected by the work product doctrine and attorney client privilege and was, in any event, available to Plaintiff in the claim file produced in response to Plaintiff's document request. Plaintiff contends that the interrogatory seeks highly relevant information and that the response is insufficient as no basis for assertion of any privilege has been set forth by MetLife.

Interrogatory No. 24 requests MetLife identify documents "describing the effects or symptoms of fibromyalgia or myofacial pain syndrome" used or referenced by it. While not specifically so stating, the Interrogatory appears to be directed primarily to MetLife's decision to terminate Plaintiff's benefits. MetLife objected to the request on the ground that it sought evidence "beyond identification" of the administrative claim record and Plan documents and thus is irrelevant to the proper standard of judicial review applicable to Plaintiff's ERISA claim. Plaintiff argues that, as it is undisputed Plaintiff suffers from fibromyalgia and myofacial pain syndrome, the requested information is likely to have influenced MetLife's decision and is therefore relevant. McClaren Affidavit, ¶ 46.

Interrogatory No. 25 seeks to learn whether in reaching its decision to terminate Plaintiff's benefits, MetLife consulted with Mr. Todd Champlain, a rehabilitation expert, as to Plaintiff's ability to work and requests MetLife provide the identity of its employees who had such conversations, their respective dates, and details of such communications if they occurred. MetLife objected that the Interrogatory sought legal analysis exempt from discovery under the work product doctrine and that if the information exists, it is included within the administrative claim file which had been produced. Plaintiff contends that MetLife failed to provide any basis for an assertion of a privilege and the information sought is relevant.

Interrogatory No. 26 requested MetLife advise Plaintiff whether any of its employees had consulted Dr. John Zoll about Plaintiff's condition including details regarding such communications. MetLife objected on the same grounds as it interposed to Interrogatory No. 25 regarding Mr. Champlain. Plaintiff argued that MetLife's objection was frivolous. *Id.*, ¶ 53.

Interrogatory No. 27 seeks information as to whether MetLife has within the past 10 years ever determined that a claimant suffering from fibromyalgia and myofacial pain syndrome was unable to engage in gainful employment. MetLife objected on the basis that the Interrogatory sought information

---

6. Although Plaintiff's motion refers to Interrogatory No. 22, McClaren Affidavit, ¶ 40, as its description of the interrogatory specifically refers to the identity of those involved in the appeal of the termination, the court assumes Plaintiff actually intends to challenge Defendant's response to Interrogatory No. 23, as Interrogatory No. 22 relates to documents underlying paragraph 47 of MetLife's Answer.

irrelevant to the applicable standard of review and that it was outside the administrative record. Plaintiff argued that as fibromyalgia and myofacial pain syndrome define conditions where a person suffers pain throughout the extremities and the neck and facial region of the body, if MetLife maintains a practice to denying claims based on these conditions, such practice would be evidence of arbitrariness in administering such claims. *Id.,* ¶ 57. Thus, Plaintiff contends the requested information is relevant.

Interrogatory No. 28 requests information regarding MetLife's use of Dr. Zoll as an expert in connection with processing claims and the details of any financial arrangements with Dr. Zoll as well as his credentials, and whether over the past 10 years Dr. Zoll found a MetLife claimant to be disabled. Interrogatory No. 31 requests the source of funds used by MetLife to pay Dr. Zoll. MetLife objected on the ground that the requests sought information not relevant to the applicable standard of review. Plaintiff contends the information is discoverable. *Id.,* ¶ 63

Interrogatory No. 29 asks MetLife to state whether it is presently the fiduciary under the Plan and the reasons for its termination as such fiduciary. MetLife objected that the request sought irrelevant information. Plaintiff argues such information is relevant. *Id.*

Interrogatory No. 30 requests MetLife to provide a basis for its First Affirmative Defense that the Complaint fails to state a claim. MetLife objects on the basis the request violates the work product doctrine. Plaintiff argues the Interrogatory is a proper one. *Id.*

Interrogatory No. 32 asks MetLife to state the basis upon which it denied the allegations contained in paragraph 15 of the Complaint that despite having received, since December 26, 1995, benefits under the EDS Long Term Disability Plan, MetLife terminated such benefits as of June 25, 1998, based on its finding that Plaintiff was able to return to work as a receptionist/secretary at EDS. MetLife interposed objections including work product and attorney client privilege, that the information sought required investiga-

tions beyond its own records and employees, and that the request was vague and burdensome. Plaintiff argues the request was proper. *Id.*

## DISCUSSION

*1. Discretionary Standard of Review Objection.*

■ Where an employee welfare plan subject to ERISA grants to a fiduciary authority to administer a plan in the exercise of discretion, the applicable standard for courts to apply in reviewing a fiduciary's decision to deny benefits under the plan is whether it is arbitrary and capricious, *i.e.,* "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Miller v. United Welfare Fund,* 72 F.3d 1066, 1070 (2d Cir.1995), *quoting Pagan v. NYNEX Pension Plan,* 52 F.3d 438, 442 (2d Cir.1995) (*quoting Abnathya v. Hoffmann–La Roche, Inc.,* 2 F.3d 40, 45 (3d Cir.1993)). *See also Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) (standard of review under § 1132(a)(1)(B) is *de novo* unless benefit plan gives administrator or fiduciary discretionary authority to determine eligibility for benefits).

■ ERISA also mandates that every plan participant who is denied benefits receive a written notice of such denial "setting forth the specific reasons for such denial" and an opportunity for a 'full and fair review.' 29 U.S.C. § 1133(1), (2). "The basic requirements of 'full and fair review' include knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of that evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision." *Miller v. United Welfare Fund,* 851 F.Supp. 71, 74 (E.D.N.Y.1994), quoting *Grossmuller v. International Union,* 715 F.2d 853, 858 n. 5 (3d Cir.1983) (citing cases). Although under either the *de novo* or arbitrary and capricious review standards a court is not permitted to consider evidence not presented to the plan administrator whose decision is subject to judicial review, *Miller, supra,* 72 F.3d at

1071, plan trustees have "an affirmative duty to seek expert advice when required." *Id.* at 1073 (citing *Donovan v. Bierwirth,* 680 F.2d 263, 272–73 (2d Cir.), *cert. denied,* 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982)). In a case where the plan administrator is shown to operate under a conflict of interest, for example where the administrator is an insurance carrier which provides benefits under a contract of insurance with the plan fiduciary, the conflict becomes a factor to be considered by the court under the arbitrary and capricious standard of review. *Bruch, supra,* at 115, 109 S.Ct. 948. If the court finds the administrator's decision was in fact influenced by the conflict, the standard of review becomes *de novo* notwithstanding the apparent reasonableness of the decision. *Sullivan v. LTV Aerospace & Defense Co.,* 82 F.3d 1251, 1259 (2d Cir.1996).

■ MetLife argues that in an action for judicial review pursuant to § 1132(a)(1)(B) in a case where, as here, the plan has given the fiduciary and administrator discretionary authority to decide benefit claims, as the arbitrary and capricious standard applies, the court's review is limited to the information in the claim file upon which the administrator acted thus negating, as irrelevant, the need for discovery of information beyond that contained in the claim file. MetLife's Memorandum of Law in Opposition at 3. Plaintiff contends that the Plan documents submitted by Defendants do not establish that MetLife was granted discretionary authority over Plaintiff's claim for long term benefits. Plaintiff's Reply Declaration at 3.

Assuming, for the purpose of discussion, that the burden of establishing such discretionary authority is Metlife's, the court finds that MetLife was granted discretionary authority by EDS to render decisions on appeals for review of denials of employee claims for long term disability benefits, including supplemental long term disability benefits, under the Plan. First, the Plan itself covers supplemental long term disability benefits. Neel Declaration, Exhibit A, ¶ 4.2(b) (election of supplemental disability benefits

results in payment of benefit based on 70% of employee's monthly earnings); Plaintiff's Reply Declaration, Exhibit A, ¶ 1 (Summary Plan Description for Supplemental Long Term Disability Plan) ("The same reductions, exclusions, limitations, definitions, and requirements that apply to basic LTD [Long Term Disability] coverage also apply to supplemental LTD"). Second, Plaintiff specifically alleged such as fact in her complaint. Complaint, ¶ 32 ("EDS's LTD plan empowers Metropolitan Life, as the plan administrator, with 'full discretionary powers' to interpret the plan and decide all questions concerning the eligibility of any individual to participate in the plan."). Third, the Plan states that the Plan Administrator, EDS, has "full discretionary authority … to authorize payments of benefits." Neel Declaration, Exhibit A, ¶ 6.2(e). Finally, at the time Plaintiff's benefits were terminated, the functions of deciding appeals from denials of long term disability claims under the Plan had been delegated to MetLife by an amendment to an Administrative Services Agreement, dated January 1, 1997, effective January 1, 1998. Exhibit B to Neel Declaration.

In 1997, EDS and Metlife agreed that MetLife would act as Plan Administrator with respect to disability claims. *Id.* ("Attachment B") Administrative Services Agreement effective January 1, 1997, ¶ A.1. at 5 ("MetLife has agreed to assume responsibility and discretionary authority for determining eligibility for disability benefits."). Neel Declaration, ¶ 3.[7] Thus, in 1998, when Plaintiff's benefits were terminated, and in 1999, when Plaintiff's appeal of the termination was denied on administrative appeal, MetLife determined a participant's eligibility for long term disability including supplemental benefits under the Plan, and acted on appeals of denials of claims for such benefits on a discretionary basis. Accordingly, the decision to terminate Plaintiff's long term disability benefits made by MetLife, and MetLife's decision rejecting Plaintiff's administrative appeal of such decision are subject to the arbitrary and capricious standard of review.

---

7. In November 1996, EDS and MetLife agreed that MetLife would provide advice to EDS regarding long term disability claims having an initial date of disability prior to January 1, 1997. *Id.,* Attachment B, ¶¶ 1, 13.

MetLife contends that in actions for § 1132(a)(1)(B) actions, under the arbitrary and capricious standard, discovery is limited to the administrative record upon which the administrator based its decision. MetLife Memorandum of Law in Opposition at 2, citing *Miller, supra,* 72 F.3d at 1071. ("We follow the majority of our sister circuits concluding that a district court's review under the arbitrary and capricious standard is limited to the administrative record."). However, review under this deferential standard does not displace using pretrial discovery to determine the actual parameters of the administrative record and whether or not the fiduciary acted arbitrarily and capriciously with respect to a claim for benefits under a plan as *Miller* itself demonstrates.

In reviewing a fiduciary's decision, a district court "must consider 'whether the decision was based on a consideration of the relevant factors.' " *Miller, supra,* 72 F.3d at 1071 (quoting *Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst.,* 46 F.3d 1264, 1271 (2d Cir.1995)). In finding that the trustee's decision in that case denying benefits based on "limited information" was arbitrary and capricious, the court in *Miller* relied upon deposition testimony of the fund's administrator which revealed that neither employees of the fund, including the administrator who advised the trustees, nor the trustees, understood the medical information in the claimant's file thus rendering such information "useless" to the trustees. *Miller, supra,* 72 F.3d at 1072. The permitted discovery also established that the trustees had considered only the claimant's physician's letter recommending specialized nursing care, nursing notes, and the recommendation of the fund's third party claims processor. *Miller, supra,* 851 F.Supp. at 73. Such evidence supported the finding of the district court, affirmed by the Second Circuit, that the trustees did not consider the relevant nursing notes and relied upon the brief summary prepared by the chief administrative employee of the fund based on information which he " 'understood somewhat' or could not understand at all.' " *Miller, supra,* 72 F.3d at 1072. Accordingly, the court found the trustees' decision to have failed to consider the factors relevant to the claim

and, as not based on substantial evidence, was the decision therefore arbitrary and capricious. *Miller, supra,* 72 F.3d at 1073. Thus, in *Miller,* the court approved, and relied upon, pretrial discovery in an ERISA case challenging the denial of benefits pursuant to a plan under the arbitrary and capricious standard to assist the court in evaluating (i) the exact nature of the information considered by the fiduciary in making its decision, (ii) whether the fiduciary was competent to evaluate the information in the administrative record, (iii) how the fiduciary reached its decision, and (iv) whether, given the nature of the information in the record, it was incumbent upon the fiduciary to seek outside technical assistance in reaching a "fair and full review" of the claim.

Nor does the arbitrary and capricious standard as applicable to reviewing actions by a plan trustee, in exercising discretionary authority, itself preclude the potential need for discovery. First, it is familiar law that discovery is available where a beneficiary challenges a trustee alleging improper administration of a trust for the beneficiary's benefit. *Bouis v. Warren,* 112 So.2d 283, 284 (Fla.Ct.App.2d Dist.1959) (use of interrogatories upon establishing right to accounting on claim of constructive trust); *Vasoli v. Vasoli,* 100 N.H. 200, 122 A.2d 533, 534 (1956) (disclosure of source of assets during deposition recognized as proper upon establishing *prima facie* case of constructive trust); *Barnett v. Ross,* 333 Pa. 510, 3 A.2d 923, 925 (1939) (in action for breach of implied trust by fiduciary, plaintiff beneficiary may seek bill of discovery in equity to support claim of existence of trust and misconduct of alleged trustee); *Union Trust Co. v. Superior Court,* 11 Cal.2d 449, 81 P.2d 150 (1938) (directing discovery of books and records used by trustee upon counterclaim of breach of trust by beneficiary); *Alabama Girls' Industrial School v. Reynolds,* 143 Ala. 579, 42 So. 114, 115 (1904) (in an action between trustee and beneficiary "a trustee is bound to render every necessary information required of him ...."); *see also* Annotation, RIGHT OF BENEFICIARY OR CLAIMANT OF ESTATE TO INSPECT BOOKS AND PA-

PERS OF TRUSTEE OR EXECUTOR, 118 A.L.R. 269 (1939); *cf.,* N.Y.Surr.Ct.Proc.Act § 2211.2. (McKinney's 1997) ("fiduciary may be examined under oath by any party to the proceeding . . . as to any matter relating to his administration of the estate."); *Pardee v. Mutual Benefit Life Ins. Co.,* 238 A.D. 294, 265 N.Y.S. 837, 842 (4th Dep't 1933) (examination before trial limited to plaintiff's capacity as testamentary trustee). Significantly, the cases recognizing the availability of discovery against a fiduciary do not distinguish between disputes involving discretionary or nondiscretionary decisions, as permitted under the trust instrument, by the fiduciary, as relevant to whether discovery should be granted. As the Supreme Court in *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.,* 472 U.S. 559, 570, 105 S.Ct. 2833, 86 L.Ed.2d 447, *rehrg. denied,* 473 U.S. 926, 106 S.Ct. 17, 87 L.Ed.2d 696 (1985) stated, "[in enacting ERISA, Congress] invoked the common law of trusts to define the general scope of their [trustees and other fiduciaries acting under the plan] authority and responsibility." *See also Firestone v. Bruch, supra,* noting that ERISA "abounds with the language and terminology of trust law." *Bruch, supra,* at 110, 109 S.Ct. 948. Here, it is undisputed that the plan constitutes a trust for Plaintiff's benefit under ERISA. Therefore, to the extent ERISA is founded upon principles of trust law, permitting discovery in relation to judicial review of the conduct of fiduciaries is consistent with such principles.

Second, the Second Circuit has held that in challenging a plan trustee's miscalculation of required contribution payment pursuant to 29 U.S.C. § 1103(c)(2)(A)(ii), it must be established that the trustee's error was arbitrary and capricious, a showing the employer must make through an "evidentiary submission" based upon pretrial discovery. *Frank L. Ciminelli Construction Co., Inc. v. Buffalo Laborers Supplemental Unemployment Benefit Fund,* 976 F.2d 834, 835, 836 (2d Cir. 1992). ("Ciminelli made no attempt in discovery to probe the reasons for the funds'

failure to repay the overpayments or to develop an affirmative case demonstrating arbitrariness or capriciousness. \*\*\* More was required for it to prevail."). Thus, the Second Circuit has recognized that applicability of an arbitrary and capricious standard of review does not foreclose discovery, rather, in some instances, it requires that discovery occur in order to facilitate review.

Third, as the arbitrary and capricious standard requires courts to scrutinize, although deferentially, decisions by plan fiduciaries for lack of reasonableness, including the absence of substantial evidence, such deficiencies in the administrative review function can be significantly illuminated through the reasonable exercise of standard discovery devices available in federal civil practice. As the facts developed in *Miller* through discovery revealed basic deficiencies in the quality of the information before the trustees and a concomitant lack of meaningful consideration, the mandate of ERISA that denials of claims by plan fiduciaries be reviewed by federal courts could not have been carried out effectively without benefit of such discovery. Indeed, as the *Miller* case demonstrates, in litigation involving denials of claims under ERISA covered plans, as with other matters, one can be harmed by what one does not know.[8] Except for the discovery which took place in the case, it is doubtful that "the record" could have revealed fully such fiduciary default. *See also Pulvers v. First UNUM Life Insurance Company,* 210 F.3d 89, 93 n. 1 (2d Cir.2000) (referring to deposition testimony of "senior risk specialist" regarding administrator's unusual application of plan provision in assessing whether administrator's denial of benefits was arbitrary and capricious); *Bedrick v. Travelers Insurance Company,* 93 F.3d 149, 151–53 (4th Cir.1996) (reversing grant of summary judgment to plan administrator where interrogatory answers and deposition testimony of reviewing physicians' credentials and rationale, including reference by reviewing physician to medical journal article not included in claimant's review file, for termination of physical and

---

8. Judge Calabresi, in dissenting from the majority's decision in *Miller* to remand the matter to the trustees for further consideration, believed that to do so would deprive plaintiff in that case

of a fair hearing as the "record" demonstrated the trustees to have "totally abdicated their fiduciary responsibilities in rendering their initial decision." *Miller, supra,* 72 F.3d at 1074.

occupational therapy to beneficiary's child, who suffered from cerebral palsy and spastic quadriplegia, demonstrated abuse of discretion); *cf., Wildbur v. ARCO Chemical Co.,* 974 F.2d 631, 642 (5th Cir.1992) (inconsistent interpretations of plan provisions resulting in benefit denials subject to discovery and relevant to whether determination was "legally correct."); *Lickteig v. Business Men's Assurance Company of America,* 1994 WL 463944 n. 3 at *5 (W.D.Mo.), *aff'd,* 61 F.3d 579 (8th Cir.1995) (exclusion from coverage of employee held abuse of discretion without need for further discovery but recognizing discovery "might be necessary to develop theory" that trustees have given inconsistent interpretations of "pertinent language of plan.").

Nor will the use of discovery to test whether the administrative claim record before the court is accurate and complete and to explain, where necessary, its meaning interfere with the goal of achieving prompt resolution of disputes under ERISA covered plans. *Miller, supra,* 72 F.3d at 1071 (citing *Perry v. Simplicity Engineering,* 900 F.2d 963, 967 (6th Cir.1990)). ("A primary goal of ERISA was to provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously.") In *Miller,* the beneficiary's claim was submitted to the fund in December 1990 following the surgery in connection with which reimbursement for private nursing duty was sought. *Miller, supra,* 851 F.Supp. at 73. In March and April 1991, the fund's third party claims processor requested additional information. *Id.* The claim was denied on June 26, 1991. Plaintiff subsequently appealed the denial to the trustees; the appeal was considered by the trustees on April 29, 1992 [9] and Plaintiff was advised of the denial on June 23, 1992. *Id.* The instant action was commenced on April 15, 1993 and removed to district court. *Id.* The administrator's deposition took place on September 21, 1993. *Id.* The district court denied summary judgment on March 1, 1994, and a bench trial resulted in an award to plaintiff on May 30, 1994. Full administrative review by the fund therefore took approximately 18 months to complete; judicial review, including discovery, was completed in about 13 months. Thus, judicial review under § 1132, including the pretrial discovery which proved crucial to the thoroughness of that review, occurred within less time than the administrative claims process itself.[10]

While it is possible that unbridled discovery could conceivably delay unreasonably the time required to complete judicial review in contravention of ERISA's goal of speedy adjudication, the court has ample power, *see* Fed.R.Civ.P. 16(a)(1) (court may confer with parties for the purpose of "expediting the disposition of the action"); (b)(1) (court "shall enter a scheduling order that limits the time to complete discovery"), to balance a plaintiff's need for discovery against the fiduciary's interest in prompt closure of the dispute in keeping with ERISA's overall policy. In many instances it is likely that issues regarding whether information upon which the decision makers relied is accurately and completely reflected in the administrative record can be ascertained through limited questioning conducted, including where convenient, by telephonic deposition, *see* Fed.R.Civ.P. 30(b)(7), thereby avoiding unduly burdening busy administrators and facilitating expeditious judicial review. Moreover, discovery unessential to Plaintiff's ability to effectively challenge the adverse ruling may be limited by the court for good cause. Fed.R.Civ.P. 26(c).

MetLife relies on *Perlman v. Swiss Bank Corporation Comprehensive Disability Protection Plan,* 195 F.3d 975, 981–82 (7th Cir. 1999) for support of its contention that discovery is unavailable to a beneficiary who challenges a plan fiduciary denial of benefits under the arbitrary and capricious standard. However, the court's statement in that case

---

9. The date of the appeal decision stated in the published text of the opinion, April 29, 1993, appears, in context, to be a typographical error.

10. The court does not intimate that either an 18 month period to complete administrative consideration of beneficiary's claim, or a 13 month period for judicial review, constitute the degree of prompt disposition to be expected under ERISA, rather, relative to the administrative process at issue, the additional litigation which was devoted to discovery in *Miller* does not appear to add appreciably to the overall time for disposition of the claim.

that "when there can be no doubt that the application [for benefits] was given genuine evaluation, judicial review is limited to the evidence that was submitted in support of the application," *Perlman, supra,* at 982, does not negate the possibility that an aggrieved beneficiary may, in good faith, entertain a doubt whether the fiduciary in fact gave the application "genuine evaluation."

The court's further statement in *Perlman* that discovery in an action based on § 1132 under the arbitrary and capricious standard is impermissible because discovery is not permitted in challenging government agency decision making processes, *id.,* is equally without support. First, discovery is available to assure the completeness of the administrative record presented for judicial review in an action under the Administrative Procedures Act based on a claim of arbitrary and capricious action. *Dopico v. Goldschmidt,* 687 F.2d 644, 654 (2d Cir.1982) (remanding for discovery as to completeness of administrative record); *Moody Hill Farms Limited Partnership v. United States Dep't of Interior,* 1996 WL 474209 *3 (S.D.N.Y.) ("Courts have also permitted litigants [in Administrative Procedure Act cases] to supplement the administrative record with additional material that explains the administrative officials' basis for their action.").

Additionally, Government agencies are not private sector profit seeking organizations. If, as it appears to be, the court's reference in *Perlman* is to Social Security Administration decisions, the analogy fails as the fact gathering process in the administration of Social Security benefits is regulated by law and the decision makers, including administrative law judges, are trained and experienced in reviewing such information. Moreover, the decisions of administrative law judges in Social Security benefit cases are usually detailed and based on a plethora of medical data and a transcript of an evidentiary hearing. Such thorough administrative consideration assures the court has before it the complete record upon which the agency acted as well as a full explanation for the action, thus providing a basis for meaningful, while deferential, review of a denied claim without the need for further development or

clarification of the record through discovery. Moreover, even the general deliberative process privilege applicable to decision making by government agencies is not absolute. *In re Subpoena Served Upon the Comptroller of the Currency, and Secretary of the Bd. of Governors of the Fed. Reserve Sys.,* 967 F.2d 630, 635 (C.A.D.C.Cir.1992) (deliberative process privilege shields from discovery only agency opinions or recommendations, but does not protect facts and may be overridden where necessary to promote Government's paramount interest that justice between litigants is done).

Finally, *Perlman* cites *De Felice v. American International Life Assurance Co.,* 112 F.3d 61, 65–66 (2d Cir.1997), *id.* at 982, in support of its view that discovery is not available in a § 1132 action to review a discretionary decision denying benefits, however, a careful reading of *De Felice* shows the Second Circuit did not hold that discovery was unavailable in such ERISA cases. Rather, the court determined that where review is under the de novo standard and the plan decision maker is shown to be influenced by a conflict of interest, whether to consider evidence outside the administrative record is left to the court's discretion based upon good cause. *De Felice, supra,* at 66.

Adopting the stringent restriction on discovery in § 1132 cases announced in *Perlman* effectively grants discretionary decisions by plan administrators to deny benefits "a uniquely privileged position in the entire field of administrative ... law." *Perlman, supra,* at 983 (Wood, J., dissenting). Such a rule finds no support within the text of ERISA or the Federal Rules of Civil Procedure applicable to discovery, effectively insulates decisions by fiduciaries adverse to beneficiaries from meaningful judicial review as mandated by ERISA, and is contrary to the common law of trust litigation.

The risk of additional burden to plan administrators must be balanced against the right of aggrieved participants to obtain, as contemplated by Congress, meaningful judicial review. Federal courts are not without sufficient power to regulate discovery to achieve a fair balance between competing considerations. As the Supreme Court, in

granting discovery, stated, "Help for the solution of problems of this order is not to be looked for in restrictive formulas. Procedure must have the capacity of flexible adjustment to changing groups of facts." *Sinclair Refining Co. v. Jenkins Petroleum Process Co.*, 289 U.S. 689, 693, 53 S.Ct. 736, 77 L.Ed. 1449 (1933) (Cardozo, J.). Given the potential for a growing caseload of claims seeking review of ERISA covered benefit denials, there may be an understandable motivation to restrict discovery as a means of accelerating disposition of these cases. But judicial review without a complete and accurate record is in no one's interest and making mistakes quickly does not comport with the meaningful judicial review Congress undoubtedly had in mind. This is particularly the case where such denials involve loss of benefits needed to cover medical treatment posing major economic burdens, well beyond the capacity of the affected individuals. In short, insofar as *Perlman* holds discovery is unavailable to aggrieved beneficiaries challenging a plan's denial of benefits under an arbitrary and capricious standard, this court declines to follow it. *See Beck v. Manufacturers Hanover Trust Company*, 650 F.Supp. 48, 49 (S.D.N.Y.1986) (district court within Second Circuit not obliged to follow contrary legal interpretation of Seventh Circuit).

Nor do the other cases relied upon by MetLife require a different result. For example, in *Farley v. Arkansas Blue Cross & Blue Shield*, 147 F.3d 774 (8th Cir.1998) the court stated that as "palpable conflict[s] of interest or serious procedural irregularity" will appear on the face of the administrative record, discovery will only "rarely" be necessary. *Farley, supra*, at 776 n. 4. However, nothing in this statement prohibits discovery where such conflict is not "palpable," nor does the court address the question of how to assure the administrative record presented to the court is in fact the one acted upon by the fiduciary, and whether the fiduciary acted competently in its consideration of the claim. In *Hensley v. Northwest Permanente Retirement Plan*, 5 F.Supp.2d 887 (D.Or. 1998), the court permitted document requests and depositions limited to determination of the proper standard of review applicable to the plan decision at issue, *i.e.*, whether the

decision to exclude plaintiffs as plan beneficiaries was influenced by a "pecuniary" or "systemic" conflict of interest. *Hensley, supra*, at 895. The court did not consider the issue whether a plaintiff under any circumstances, such as those presented in the instant case, may seek discovery of the plan fiduciary in an action to review, applying the unreasonableness test, a benefit denial determination. In *Maune v. IBEW, Local No. 1, Health and Welfare Fund*, 83 F.3d 959 (8th Cir.1996), the court upheld denial of the "opportunity to conduct *further* discovery" as the record showed the district court "had before it all of the evidence relied upon by the trustees in denying the claim." *Maune, supra*, at 963 (emphasis added). Rather than prohibiting discovery in a case involving a fiduciary's discretionary denial of benefits, the court's statement may be construed to confirm the availability of discovery although not to the full extent requested. In *Kaus v. Standard Insurance Co.*, 985 F.Supp. 1277 (D.Kan.1997) the court denied discovery because plaintiff sought discovery of evidence of plaintiff's health problems which were beyond the administrative record and thus not presented to the plan administrator and not relevant to its decision denying the claim. *Kaus, supra*, at 1281.

In each of these cases, the requested discovery at issue here either was not directly presented or went beyond the requests of the Plaintiff in the instant case. *See Farley, supra*, (discussion of issue in footnote appears to be dicta); *Hensley, supra*, at 895 (plaintiffs sought "motivation" for excluding plaintiffs from plan coverage); *Maune, supra*, at 963 (court able to determine from record that further discovery unnecessary to proper judicial review); *Kaus, supra*, at 1281–83 (seeking discovery of health problems other than those considered by administrator, explanations of supposed admissions, and alleged procedural irregularities). For these reasons and because, as discussed, case law in this circuit does not proscribe discovery in any case seeking judicial review of a discretionary decision to deny benefits, pursuant to § 1132, the court finds them inapposite. Accordingly, MetLife's objections to Plaintiff's interrogatories Nos. 16, 17, 19, 20,

24, 27, 28, and 29, on this ground, are overruled. The court turns to MetLife's other objections.

### 2. Rule 33(d) Objection.

■ Interrogatory Nos. 1, 2, 3, request identification of MetLife employees "most knowledgeable" about the termination of Plaintiff's benefits, the relationship between EDS and MetLife, and the persons who participated in or were "consulted" about Plaintiff's eligibility for continued benefits. Interrogatory No. 15 seeks the identity, job title and employer of persons who made the actual termination decision. MetLife's objection is that the information is contained in the documents produced to Plaintiff by MetLife. Fed.R.Civ.P. 33(d) permits, in lieu of an answer to an interrogatory, that the responding party may refer the requesting party to business records of the responding party produced to the requesting party if the burden of gleaning the information sought is "substantially the same" for both parties. Here, Plaintiff has averred that she has reviewed the documents produced and is nevertheless unable to locate the information necessary to answer the interrogatories at issue. MetLife has not responded further as to Plaintiff's assertion. For example, Interrogatory No. 1 asks the identity of the person "most knowledgeable" regarding the decision to terminate Plaintiff's benefits. While the administrative file produced to Plaintiff undoubtedly contains names of MetLife employees involved in the decision making process leading to the challenged termination, it does not follow necessarily from such fact that the person meeting the criterion set forth by Plaintiff is reasonably identifiable within the four corners of the administrative file, assuming this is the document to which MetLife refers. Further, while the file may refer to individuals, it is not necessarily the case that they are identified in such a manner as to reasonably facilitate Plaintiff's ability to answer its questions from the information MetLife has made available to her. Depending on how completely and accurately MetLife maintains all pertinent information, the actual identity of the person possessing the greatest knowledge concerning Plaintiff's case may not be

within the file. The same point may be made regarding Interrogatories Nos. 2, 3, and 15. Moreover, the requested details appear to the court to represent information which should be readily known to MetLife enabling it to respond without undue administrative burden.

Interrogatory No. 7 asks MetLife to state whether Plaintiff received Long Term Disability Benefits pursuant to the 1998 Plan. This appears to call for a specific response based on whether a 1998 Plan exists and whether Plaintiff received benefits under it. Plaintiff is entitled to confirm the factual basis for MetLife's decision making as to termination of her benefits. Accordingly, the Interrogatory seeks information which MetLife has special competence to provide. Interrogatory No. 11 requested MetLife to state whether the denial of Plaintiff's benefits was the result of a change in her medical condition. MetLife did not directly answer, instead referred Plaintiff to the claim file. Again, the requested answer is particularly within MetLife's competence, and Plaintiff should not be required to guess at her peril as to the answer by perusing the file which may or may not contain the necessary information. Accordingly, the court credits the Plaintiff's representation that the documents are insufficient for this purpose, and overrules MetLife's objection on this ground. MetLife shall answer Interrogatories Nos. 1, 2, 3, 7, 11 and 15 fully.

### 3. Work Product—Attorney Client Privilege Objections.

MetLife also objected that some of Plaintiff's interrogatories sought information protected under the work product doctrine and attorney client privilege. However, in each instance, as Plaintiff pointed out, MetLife failed to provide the privilege log required by Fed.R.Civ.P. 26(b)(5). *Burns v. Imagine Films Entertainment, Inc.*, 164 F.R.D. 589, 594 (W.D.N.Y.1996). Therefore, MetLife's objections to Interrogatories Nos. 5, 10, 23, 25, 26, 30, and 32, on these grounds, are overruled.

### 4. Burdensomeness Objections.

■ In response to Interrogatories Nos. 10, 30, and 32, MetLife asserted, *inter alia*,

they were burdensome, and that Interrogatory No. 32 was also vague and ambiguous. It is settled law that to support an objection based upon burdensomeness the objecting party must particularize the basis for the objection as generalized assertions are inadequate. *Fletcher v. Atex,* 156 F.R.D. 45, 54 (S.D.N.Y.1994) (citing *In re "Agent Orange" Prod. Liability Litig.,* 821 F.2d 139, 145 (2d Cir.) *cert. denied sub nom. Dow Chemical v. Ryan,* 484 U.S. 953, 108 S.Ct. 344, 98 L.Ed.2d 370 (1987)). Here, MetLife has failed to comply with this requirement and accordingly the objection on that ground is overruled. Nor does Interrogatory No. 32, seeking the basis for a denial to a specific allegation in the complaint, appear in any way vague or ambiguous. Such objection is also overruled.

### 5. Relevancy Objections.

■ MetLife also objects to a number of the interrogatories at issue based on relevancy grounds, specifically, Nos. 13, 16, 17, 19, 20, 24, 27, 28, 29, and 32. Interrogatory No. 13 asked if MetLife reached the conclusion, in 1998, that Plaintiff was no longer eligible for the long term disability benefits she had been receiving under the plan. The role MetLife played in causing Plaintiff's loss of benefits and whether it acted unreasonably as a fiduciary in carrying out that role is highly relevant to the issue before the court on Plaintiff's § 1132 claim. Under Fed. R.Civ.P. 26, information that is either admissible or is reasonably calculated to lead to the discovery of admissible evidence is discoverable. Whether MetLife and EDS employees responsible for the decision to terminate Plaintiff's benefits acted unreasonably, whether the record upon which they acted as reflected in the administrative claim file is accurate and complete, whether they considered information outside that record, whether they acted under a conflict of interest or were influenced by factors making their evaluations arbitrary, and whether they competently evaluated the medical information regarding Plaintiff's condition are all questions relevant to the applicable standard of review in this case. *See Bedrick, supra; Miller, supra.* As noted, Discussion, *supra,* at 102, the actual role of MetLife in the administra-

tion of the plan was modified over time by agreement between EDS and MetLife. Thus, whether MetLife during 1998 concluded Plaintiff was no longer eligible for long term disability benefits will have relevance to the ultimate issue of the alleged unreasonableness of the decision to terminate her benefits. Further, depending on the date of other actions taken by MetLife in connection with the eventual termination of Plaintiff's benefits, the requested information may reasonably lead to the discovery of other admissible evidence relevant to the matter. The court also notes MetLife's response failed to state whether MetLife had reached the decision as requested by the Interrogatory. Accordingly, MetLife's objection to the Interrogatory is overruled on this ground.

■ Interrogatory No. 16 requests details of the compensation plan for persons involved in the decision to terminate Plaintiff's benefit. Interrogatory No. 17 asks for the identity of members of the Plan Benefits Committee. Plaintiff contends that the information sought by Interrogatory No. 16 is relevant and necessary to establish the existence of potential conflict of interest based on economic incentives. Based on the court's review of the Plan document's attached to the motion papers, MetLife does not insure the benefits at issue under the Plan thereby removing the possibility of a relevant conflict on this ground. Nevertheless, if a decision maker were granted incentives based on the frequency of claim denials processed or other forms of compensation related to approval or denial of claims for benefits, such potential financial influences could pose a risk of arbitrary action and may well be relevant to Plaintiff's claim. Therefore, it is conceivable that an issue going to the existence of a conflict or economic influence ₀based on the compensation plan of the Plan administrators could arise in this case, relevant to the proper standard of review.

However, as the court finds Interrogatory No. 16, literally read, calls for basic salary information it sweeps too broadly and therefore constitutes a request for irrelevant information. It is the fact of undue financial influence, not the specific basic salaries, which are relevant. Accordingly, MetLife's

objection to Interrogatory No. 16 is sustained with leave to Plaintiff to serve a further interrogatory limited to compensation program details which relate more directly to the question of potential conflict of interest and improper bias in the review of Plaintiff's claim. For example, Plaintiff may request MetLife to state whether the persons who reviewed and acted upon Plaintiff's benefit rights received incentive compensation during the relevant time period and the basis upon which such incentives, if any, are earned.

Interrogatory No. 17, regarding the Benefits Committee which under the Plan, according to Plaintiff, has the ultimate authority to decide on claim disputes under the Plan, seeks relevant information, *see* Discussion, *supra*, re: Interrogatory No. 13, and, accordingly, MetLife's objection to this interrogatory is overruled on this ground.

Interrogatory No. 19 requests the identity of the organization to which Plaintiff's payroll deductions for the long term benefits were sent. To the extent MetLife may have received such payments, the request may conceivably establish MetLife acted as the carrier with respect to the benefits at issue, contrary to the representation by EDS and MetLife that the EDS plan was self insured through a trust. The Interrogatory thus cannot be said to seek irrelevant information. MetLife does not argue the request is burdensome and the objection is therefore overruled.

Interrogatory No. 20 seeks the identity of the plan's trustees and their respective job positions. As such information may assist Plaintiff in ascertaining the identity of the those trustees, if any, who may have actually exercised discretionary authority under the Plan resulting in termination of her benefits, the request seeks relevant information. MetLife's objection based on a lack of relevance is therefore overruled.

Interrogatory No. 24 requests MetLife identify all documents describing fibromyalgia or myofacial pain used or referenced by MetLife. Although not specifically stated in the Interrogatory, for the purposes of the instant motion, the court interprets the request to relate to documents, particularly medical sources which may have been utilized by MetLife in connection with performing its duties with respect to the EDS plan, which may in turn have influenced MetLife's determination that Plaintiff's benefits should be terminated. Consultation by plan administrators and their advisors of technical sources on the medical aspects of a beneficiary's claim are relevant to the court's review, particularly where such sources are not otherwise revealed on the face of the claim file to which an aggrieved claimant has been given access. *See Bedrick, supra*, at 153 (noting failure of reviewing physician to provide medical basis for opinion that therapies at issue would be ineffective and reliance of another reviewing physician, unfamiliar with relevant medical "textbooks and treatises," upon "a single medical journal article"); *Miller, supra*, 72 F.3d at 1072–73 (noting decision makers' lack of knowledge of whether staff advisors had "received any assistance" in effort to understand claimant's medical records and failure of decision makers to obtain technical advice necessary render a well informed decision on the merits of the claim). If MetLife did consult such sources, the nature of the sources and the related ability of MetLife personnel to competently interpret and apply the information to Plaintiff's eligibility for continued benefits is relevant to the court's review of the determination at issue. Thus, it cannot be said the Interrogatory seeks irrelevant information, and the objection is therefore overruled on this ground.

Interrogatory No. 27 asks whether MetLife has previously determined that a person suffering from either myofacial pain or fibromyalgia was unable to participate in gainful employment, the number of such determinations, and the number of claims submitted to MetLife based on such conditions over the past 10 years. Initially, the court notes the Interrogatory is not limited to cases arising under the EDS plan at issue. Thus, the court construes the request as one directed to actions taken by MetLife relating to claims similar to Plaintiff's irrespective of their source.

If a plan were to routinely determine a particular condition allegedly suffered by a claimant was not a recognized medical condition and deny benefits on that basis, the aggrieved claimant would be substantially hindered in his ability to challenge such determinations if he were prevented from knowing this fact. Conversely, if the plan had previously found all claims based on such condition to qualify for benefits, such fact would assist the aggrieved claimant in showing the deviation from past decisions in his case to be without rational basis. Inconsistencies in interpretation by plan administrators may create need for discovery on whether such inconsistencies represent arbitrary and capricious decision making. *See Wildbur, supra,* at 642, *Lickteig, supra,* at *5 n. 3. As MetLife has failed to specifically object to the Interrogatory on the basis of burdensomeness, the objection must be considered waived. Fed.R.Civ.P. 33(b)(4) (objections to interrogatories must be "stated with specificity" and absent timely objection not otherwise excused for good cause is deemed waived). The requested information is therefore relevant and the objection must be overruled on this ground.

 Interrogatory No. 28 seeks detailed information concerning the relationship with MetLife of Dr. John Zoll, who examined Plaintiff and prepared a report to MetLife describing her condition. Specifically, Plaintiff requests information regarding financial arrangements between Dr. Zoll and MetLife over the past 10 years, the number of instances Dr. Zoll has found a claimant disabled, the number of independent medical examinations conducted by Dr. Zoll for MetLife over the past 10 years, and Dr. Zoll's credentials. As to the information regarding disability examinations, because the Interrogatory is directed to MetLife, the court presumes it relates to examinations conducted on behalf of MetLife.

Whether a medical advisor to a plan administrator exercises independent judgment or functions as an arm of the administrator is relevant to the issue of arbitrary decision making as are the credentials of such advisors. *Bedrick, supra,* at 153–154 (physician advisor considered himself as "supporter" of plan administrator's legal office, had not seen patients in seven years, and was not familiar with textbooks or treatises dealing with beneficiary's condition); *Miller, supra,* 72 F.3d at 1072 (absence of qualified medical opinion supporting administrator's denial of benefits considered by court in finding denial was arbitrary and capricious based on lack of substantial evidence). MetLife has waived any objection based on burdensomeness. Accordingly, as the Interrogatory seeks relevant information it is overruled on this ground.

 Interrogatory No. 29 asks whether MetLife continues to act as the Plan's fiduciary. Whether MetLife continues to serve as the Plan's fiduciary does not bear upon the question of whether the actions taken by MetLife to terminate Plaintiff's benefits during the period it served in a fiduciary capacity were unreasonable at the time. Moreover, Plaintiff has failed, in response to MetLife's objection, to explain how such information could reasonably lead to discovery of admissible evidence. Accordingly, the Interrogatory seeks irrelevant information, and MetLife's objection is sustained on this ground.

Interrogatory No. 31 seeks to learn the source of the funds used to pay Dr. Zoll for his services to MetLife. This Interrogatory seeks information similar in character to that sought by Interrogatory No. 28. The objection is accordingly overruled on the same basis. *See* Discussion re: Interrogatory No. 28, *supra.*

## CONCLUSION

Based on the foregoing, the motion is GRANTED, in part and DENIED in part. MetLife shall, within 30 days of this Decision and Order, provide answers to Interrogatories Nos. 1, 2, 3, 5, 7, 10, 11, 13, 15, 17, 19, 20, 23, 24, 25, 26, 27, 28, 30, 31, and 32.

As MetLife's failure to provide answers has been found in part not to be substantially justified, costs are hereby awarded to Plaintiff. Plaintiff shall, within 20 days, submit her affidavit of costs; MetLife's opposition, if any, shall be filed within 20 days thereafter. MetLife shall also inform the court of the extent to which its refusal to provide discov-

ery was directed by it as a client. Fed. R.Civ.P. 37(a)(4)(A). It is the court's intention to apportion Plaintiff's costs on the basis of her relative success on the instant motion considering that MetLife's objections insofar as they were based upon an argument that discovery beyond the administrative claim record was foreclosed by the applicable standard of review were substantially justified.

SO ORDERED.