**CLIFFSTAR CORPORATION, Plaintiff,**

v.

**SUNSWEET GROWERS,
INC., Defendant.**

No. 02–CV–301A(F).

United States District Court,
W.D. New York.

Aug. 28, 2003.

**66**

Hodgson, Russ, LLP, Jeffrey C. Stravino, of counsel, Buffalo, NY, for Plaintiff.

Phillips, Lytle, Hitchcock, Blaine & Huber, Paul K. Stecker, of counsel, Buffalo, NY, for Defendant.

## DECISION and ORDER

FOSCHIO, United States Magistrate Judge.

## JURISDICTION

This case was referred to the undersigned by Hon. Richard J. Arcara on June 14, 2002 for all pretrial matters. The matter is presently before the court on Defendant's motion, filed February 3, 2003, to compel discovery (Doc. No. 13).

## BACKGROUND

This action was commenced by the filing of Plaintiff's complaint on April 19, 2002 ("the Complaint") alleging breach of a three year contract for supply of a minimum amount of prunes, during the period 1999 to 2001, to be used by Plaintiff in the production and sale of prune juice. Plaintiff is a major supplier of

---

**1.** Altheimer & Gray, a Chicago law firm, has since been replaced as Plaintiff's counsel of rec-

fruit juices for retail sale under so-called "private label" brands, *e.g.*, "Sam's Choice," a brand of fruit juice sold by Wal–Mart.

In Count IV, the Complaint alleges a state law claim of unfair competition in that Sunsweet entered the private label market in competition with Plaintiff, unfairly restricted the supply of prunes to Plaintiff which, as a result, "forced" Plaintiff to purchase prunes from alternative sources "at significantly higher than ... market [prices]" for $3.5 million more than the contract price.

Defendant's motion seeks an answer to Interrogatory No. 5 and production of documents responsive to Document Request No. 5 of Defendant's First Set of Interrogatories and Document Requests served October 1, 2002. Specifically, Interrogatory No. 5 requests Plaintiff identify each customer with whom Plaintiff "had a contract to sell prune juice during the period of the contract between Plaintiff and Defendant, together with price and quantity of shipments for each contract." Document Request No. 5 seeks production of "all documents comprising plaintiff's contracts" identified in Plaintiff's answer to Interrogatory No. 5.

Plaintiff served its Responses on November 18, 2002 in which Plaintiff objected to Defendant's Interrogatory and Document Request Nos. 5 on grounds of overbreadth, burdensomeness, and relevancy.

Plaintiff's Response to Defendant's Motion to Compel was filed on February 24, 2003 (Doc. No. 15) ("Plaintiff's Response") along with affidavits of Sean McGirr, Plaintiff's President, ("McGirr Declaration"), and Kimberly M. DeShano, Esq. of Altheimer & Gray, ("DeShano Declaration"), Plaintiff's counsel.[1] Defendant's Reply Memorandum in Support of Defendant's Motion to Compel Discovery was filed March 11, 2003 (Doc. No. 19) ("Defendant's Reply").

Oral argument on the instant motion was conducted March 17, 2003. Decision was reserved to facilitate potential settlement or other voluntary resolution of the motion by the parties.

ord by the Hodgson, Russ firm.

Thereafter, the parties engaged in discussions to resolve the dispute, which included possible withdrawal of Plaintiff's claim of unfair competition, the primary subject of the disputed discovery requests, thereby mooting Defendant's motion. The court subsequently received eight letters by the parties with respect to these efforts. By letter dated August 9, 2003, Defendant informed the court that Plaintiff had failed to provide the contracts at issue, and requested the court to rule on its motion. · By letter dated August 11, 2003, Plaintiff's counsel requested permission to file a supplemental affidavit to explain why Plaintiff's document production to date should be acceptable to Defendant while also indicating the specific customer contracts sought by Defendant were not available. However, before the court ruled on this request, Plaintiff proceeded to file the Supplemental Declaration of Sean McGirr dated August 18, 2003, which was filed with the court (Doc. No. 24) ("McGirr Supplemental Declaration"). While Defendant's motion did not specifically request sanctions, Defendant's latest letter to the court, dated August 20, 2003, pointing out material inconsistencies between factual assertions as to the existence of the contracts, which are the subject of Defendant's Interrogatory and Document Request Nos. 5, in the McGirr Declaration and McGirr Supplemental Declaration, requests sanctions be awarded.

## FACTS [2]

As noted, Plaintiff has charged that Defendant breached its three year contract to supply Plaintiff with prunes needed to enable Plaintiff to manufacture and sell prune juice to its customers for resale under such customers' private labels. Plaintiff alleges Defendant failed to deliver 2.2 million pounds of prunes for the period September 1, 2000 through August 31, 2001, the second year of the agreement. Although, according to Plaintiff, Defendant was aware Plaintiff intended to order in excess of 5 million additional pounds of prunes, Defendant refused to deliver the additional prunes unless it was paid 38 cents per pound for such prunes compared to the alleged contract pricing

schedule ranging from 17 cents reducing to 16 cents per pound for certain levels of quantities of prunes ordered above 2 million pounds. Because at the time Defendant announced its unilateral price increase, alternative sources of prunes were then unavailable to Plaintiff, Defendant was thereby "able to force" Plaintiff to acquiesce in payment of prune shipments at 20 cents per pound more than the alleged contract maximum price of 18 cents per pound. Plaintiff actually paid 28 cents per pound for the prunes Defendant did agree to ship during the 2000–2001 period, with Plaintiff expected to pay the additional 10 cents per pound the next year.

According to Plaintiff, as a result of Defendant's breach, Plaintiff was "forced" to purchase 5 million pounds of prunes from other sources at an average price of 45 cents per pound for Plaintiff's 2000 requirements. Complaint ¶ 20. Defendant is also alleged to have failed to ship prunes in excess of 127,-331 pounds for Plaintiff's needs during the last year of the contract, September 1, 2001 through August 31, 2002, compared to the stated requirement of the contract whereby Defendant agreed to ship a minimum 2 million pounds to Plaintiff for each year of the contract.

For the alleged breach during the 2000–2001 period of the contract (Complaint Count III), Plaintiff seeks not less than $1.5 million in actual damages; for the period 2001–2002, Plaintiff seeks $2.25 million. On its claim of unfair competition, Plaintiff seeks $3.5 million and punitive damages.

As relevant, Defendant's Answer asserted primarily general denials, except that Defendant interposed defenses of lack of consideration and excuse, pursuant to U.C.C. § 2-615, for Defendant's non-performance based on Defendant's allegation that any contract between the parties assumed that sufficient quantities of prunes would be available to Defendant with which to fill Plaintiff's orders pursuant to the contract. Answer ¶¶ 29–30. In addition, Defendant has counterclaimed for approximately $100,000 representing the amount owed for prune shipments made to Plaintiff during the 2000–2001 period (the

**2.** Taken from the pleadings and papers filed in this action.

deferred additional 10 cents per pound cost for shipments during 2000–2001). *Id.* ¶¶ 32–35. Defendant also seeks $2,300 for bins used to ship prunes to Plaintiff for which Defendant wants to be paid. *Id.* ¶ 36.

After service of Plaintiff's First Interrogatory and Document Request and Defendant's Responses dated November 18, 2002, Defendant deposed Janice Tharp, Plaintiff's Vice President of Manufacturing and Logistics, on December 6, 2002. In response to Defendant's question, directed to Plaintiff's unfair competition claim, Ms. Tharp was asked why Plaintiff was "forced to purchase prunes," as asserted in paragraph 38 of the Complaint. In response, Ms. Tharp testified that because Plaintiff was in the business of selling prune juice to its customers, Plaintiff could not tell customers it could not obtain the amounts of fruit needed to fill their orders. Defendant's Motion, Exh. A at 118. Defendant then asked Ms. Tharp, "Did you [Plaintiff] have contracts to supply prune juice?" Ms. Tharp answered, "Yes." *Id.* Defendant asked further if Plaintiff had such contracts during 2001. Ms. Tharp responded that "we [Plaintiff] have contracts to supply fruit juice during every year." *Id.* When asked if such contracts were in existence for 2002, Ms. Tharp again stated "Yes." *Id.* at 119. Ms. Tharp went on to acknowledge that the 3.2 million pounds supplied by Defendant to Plaintiff in 2001 was insufficient for Plaintiff "to perform under [Plaintiff's] prune juice contracts [with Plaintiff's customers]." *Id.* at 120–21. Tharp further agreed that Plaintiff's budget forecasts were based on "the contracts that [Plaintiff's] sales department had entered into with [Plaintiff's] customers." *Id.* at 123. Tharp also confirmed that the projected availability of Plaintiff's supply of prune juice, including the expected shortfall caused by Defendant's actual and anticipatory breaches, determined how much additional prunes Plaintiff would require to meet its contracts for sales commitments. *Id.* At the deposition, Plaintiff refused to identify the relevant customers on grounds of relevancy and that such information constituted proprietary information. *Id.* at 121. Defendant offered to provide a confidentiality agreement, however, such offer was rejected. *Id.* at 121–22, 124.

In its opposition to Defendant's motion, Plaintiff asserted that the requested information was confidential and of a "commercially sensitive nature," and that Plaintiff would provide other information of a less confidential and burdensome nature with which Defendant could "test whether or not Cliffstar was forced to buy prunes to meet its customers' requirements for prune juice." Plaintiff's Response at 2. Regarding Plaintiff's unfair competition claim and Defendant's request for information detailing the underlying contracts between Plaintiff and its private label customers, Plaintiff claimed it offered to tell Defendant of the aggregate quantity of prune juice Plaintiff manufactured and sold during the periods covered by the unfair competition claim which, according to Plaintiff, would be "sufficient to defend against the unfair competition claim." *Id.* at 4.

In his Declaration dated February 25, 2003 ("McGirr Declaration"), Mr. McGirr explained that Plaintiff's principal business is the manufacture and sale of fruit juice for the private label retail market and that Plaintiff is the leading producer of such products. McGirr Declaration ¶¶ 3–5. According to Mr. McGirr, Defendant seeks Plaintiff's customer contracts for 2001 and 2002 in order to determine whether Plaintiff "utilized all the prunes it [Plaintiff] purchased for crop years 2000 and 2001 for the manufacture of prune juice in accordance with customer requirements." *Id.* ¶ 14. Mr. McGirr asserts that such "volume information" is "extremely confidential" and that Plaintiff's "contracts with [its] customers—whether in for the form of an agreement or a purchase order—contains [sic] highly confidential information." *Id.* ¶ 15. McGirr further averred that Plaintiff "takes steps to ensure that information from our contracts with customers is not disclosed .…" *Id.* ¶ 19. According to Mr. McGirr, "originals of customer contracts are maintained at our headquarters in Dunkirk." *Id.* ¶ 21. The balance of Mr. McGirr's declaration is devoted to explaining why the customer specific business information as revealed in such contracts must be maintained in strict confidentiality and how from Plaintiff's data, offered to be disclosed to Defen-

dant by Plaintiff, as to Plaintiff's inventory of prunes and production of prune juice, Defendant could determine whether all of the prunes purchased by Plaintiff in 2000 and 2001 were used to make prune juice. *Id.* ¶ 22–31, 30; 32–35.

In his declaration filed August 18, 2003 (McGirr Supplemental Declaration) (Doc. No. 24), Mr. McGirr referred to Defendant's Interrogatory and Document Request No. 5 and stated that, contrary to the relevant averments in his February Declaration, Plaintiff did not produce copies of "contracts with its prune juice customers [because] the fact is that no contract exists," rather, according to McGirr, Plaintiff provides fruit juice to its private label customers based on "verbal agreements." McGirr Supplemental Declaration ¶ 7. Further, and in apparent contradiction to the above statement, McGirr also stated that the majority of Plaintiff's customer orders for Plaintiff's products are transmitted electronically, *i.e.* by e-mail or facsimile (fax) and that Plaintiff ships products in response along with an invoice from Plaintiff. *Id.* ¶ 9. Mr. McGirr goes on to reiterate the argument made in his February Declaration that the 853 pages of information provided to Defendant reflecting sales of its prune juice products for the period of September 1, 1999 through August 31, 2002, are fully responsive to Defendant's Interrogatory and Document Request Nos. 5 as Defendant can determine from such information the number of prunes Plaintiff necessarily purchased during this period in order to fill the order volumes recorded in the information provided by Plaintiff to Defendant. *Id.* ¶ 10. Mr. McGirr concludes by again representing that "no written [customer] contracts exist." *Id.* ¶ 12. Such statements misapprehend both applicable law governing discovery in federal civil actions and the scope of the Defendant's discovery demands at issue.

██ Fed.R.Civ.P. 26(b)(1) permits discovery of any non-privileged information relevant to any claim or defense if such informa-

tion is admissible or reasonably calculated to lead to the discovery of admissible evidence. *Daval Steel Products v. M/V Fakredine,* 951 F.2d 1357, 1367 (2d Cir.1991). It is basic that in order to refuse a discovery request, an objection and the basis therefore must be timely served in response to the request. *See* Fed.R.Civ.P. 33(b)(4) (objections to interrogatory request waived unless served with answers within 30 days service of the interrogatory unless such failure excused for good cause shown); *Land Ocean Logistics, Inc. v. Aqua Gulf Corporation,* 181 F.R.D. 229, 236–37 (W.D.N.Y.1998) (waiver of objection to Rule 34 document request) (citing cases). Here, Plaintiff timely objected to Defendant's requests based solely on relevancy, overbreadth, and burdensomeness grounds. No objection based on confidentiality grounds was timely asserted in Plaintiff's responses, nor did Plaintiff ever move pursuant to Rule 26(c) for any protective order on such ground. *See* Fed.R.Civ.P. 37(d) (failure to provide discovery nonexcusable unless Rule 26(c) order requested). As such, any refusals to provide the requested discovery based on the alleged confidentiality of the requested information for reasons of commercial competitive disadvantage were waived by Plaintiff.[3]

██ As the Plaintiff asserts that the requests for Plaintiff's customer contracts cannot be met because such contracts do not exist, there manifestly was no basis in the first place for Plaintiff's burdensomeness objection as the production of non-existent documents cannot be burdensome. Further, for a burdensomeness objection to be sustained, a motion to compel on this ground must be opposed by an affidavit of a person with knowledge of the record keeping system with the requested party explaining in reasonable detail the factual basis for such an objection. *Nagele v. Electronic Data Systems,* 193 F.R.D. 94, 107 (W.D.N.Y.2000) (vagueness and burdensomeness objections overruled for

---

**3.** Plaintiff refers to Defendant's agreement that Plaintiff's customer names and prices may be redacted. McGirr Supplemental Declaration ¶ 5. However, Defendant's willingness to enter into a confidentiality agreement or permit such redaction was conditioned on Plaintiff's willingness to

produce customer contracts. Letter of Paul K. Stecker to court dated August 9, 2003 at 2. Moreover, as Plaintiff now states no such contracts exist, the asserted agreement regarding redaction is void.

defendant's failure to particularize basis) (citing cases); *Burns v. Imagine Films Entertainment, Inc.*, 164 F.R.D. 589, 592 (W.D.N.Y.1996) (to sustain objections based on alleged overbreadth and burdensomeness, party cannot rely upon conclusory assertions but must provide specifics) (citing *Roesberg v. Johns–Manville Corp.*, 85 F.R.D. 292, 296–97 (E.D.Pa.1980)). For the same reasons, Plaintiff's overbreadth objection is also baseless. Moreover, on their face, Defendant's requests are specific and directly related to one of Plaintiff's major allegations.

■ The court now turns to Plaintiff's relevancy objection. Plaintiff asserts that Defendant requests the customer contracts and related information described in Interrogatory and Document Request Nos. 5 to determine whether Plaintiff used all prunes available to it to fill "customer requirements." McGirr Declaration ¶ 14; McGirr Supplemental Declaration ¶ 10. However, Defendant seeks the requested documents to test the basis for Plaintiff's allegation, in its unfair competition claim, that because of Defendant's conduct it was "forced" to obtain prunes at higher than market prices. Complaint ¶ 38. Accordingly, to test the factual and legal basis for such contention, Defendant sought answers and documents detailing facts upon which such an assertion of economic or legal compulsion to incur supramarket costs, resulting from Defendant's alleged competitive misconduct, was predicated. However, Plaintiff's opposition to the instant motion argued that, contrary to the plain meaning of Plaintiff's unfair competition claim, Count IV of the Complaint, the claim "related to Sunsweet's [Defendant's] prune juice sales." DeShano Affidavit ¶ 6. Plaintiff further asserted that as Plaintiff was suing for its cover costs, whether Plaintiff actually sold the juice made from such cover purchases was irrelevant to the unfair competition claim. *Id.;* Defendant's Response at 9 ("Cliffstar's own contracts to sell prune juice are completely irrelevant to its claim that Sunsweet's anti-competitive be-

havior enhanced its own prune juice sales at the expense of Cliffstar's."). *Id.*

Plaintiff's use of such a straw-man argument to avoid the requested discovery is unavailing. Plaintiff's unfair competition claim, unlike Plaintiff's contract claim, is a form of tort for which punitive damages are available, and asserts that Defendant alleged anticompetitive behavior forced it to purchase prunes at prices exceeding market. Such a claim on its face goes well beyond a simple demand for cover damages. Under U.C.C. § 2–712, cover is the difference between the contract price for goods or services and their market price at time of the alleged breach. *See* N.Y. U.C.C. § 2–712 (McKinney 1993) referring to "cover" as applicable to the breach of contract claims as the "making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution for those due from the seller." Thus, Defendant's requests seek to ascertain the factual basis for the allegation that Plaintiff was forced to pay such extraordinary prices, and thereby incur greater than cover damages. Whether the juice Plaintiff allegedly purchased from other sources was all sold to its customers is thus irrelevant; rather, the information Defendant seeks to ferret out is whether there is any basis for Plaintiff to have felt compelled, for whatever reason, to supply any customers with such juice because of Defendant's alleged non-performance. As such, Plaintiff's attempt to characterize the contract between the parties as one for minimum amounts of prunes and not a "requirement contract," is a distinction without a difference as to the merits of the instant motion.[4] The question in Count IV is whether the Defendant is guilty of unfair competition and the basis for Plaintiff's claim of damages flowing from supracompetitive costs Plaintiff was compelled to incur, not whether Plaintiff is entitled to recover damages on its first and second claims sounding in breach of contract.

Although Defendant maintains that the element of economic coercion in seeking an

---

4. The court notes that the Complaint refers in several places to Plaintiff's prune supply require- ments. Complaint ¶¶ 17, 20, 21, 31, 32.

alternate source of product to meet customer purchase contracts is legally irrelevant to Plaintiff's unfair competition claim, Defendant's Reply Memorandum at 1 (citing cases), such potential infirmity in Plaintiff's theory of liability on Count IV does not preclude Defendant's discovery requests. It is well established that a requesting party may seek, through discovery, to ascertain the factual basis for a requested party's allegations so as to narrow the issues and avoid surprise. *Gary Plastic Packaging Corp. v. Merrill Lynch, Inc.,* 756 F.2d 230, 236 (2d Cir.1985); *Mathias v. Jacobs,* 167 F.Supp.2d 606, 623 (S.D.N.Y.2001) (federal discovery rules to be interpreted broadly to achieve these purposes). Here, Plaintiff has alleged that it was "forced" as a result of Defendant's unfair business conduct, using its superior market power, to incur costs in the form of supracompetitive prices for the prunes from alternate sources needed to satisfy its customer contracts obligations. Complaint ¶ ¶ 34–38. As such, Defendant is entitled to learn the factual basis for these contentions. Moreover, as Defendant points out, should for any reason Plaintiff's claim as alleged in Count IV of the Complaint be construed or amended to plead a tortious interference with contract claim, the existence of such contracts as a predicate for such a claim would be directly relevant. Fed.R.Civ.P. 26(b)(1) permits expanded discovery to cover, upon good cause, information relevant to "the subject matter involved in the actions." In this case, Plaintiff's vice president for manufacturing referred repeatedly, in her December 2002 deposition, to the existence of such customer contracts, Plaintiff's counsel's filings with the court in opposition to the instant motion make updated reference to such contracts as does counsel's recent correspondence, and Plaintiff's president's February 2003 Declaration specifically acknowledges the existence of such contracts. Indeed, until Plaintiff's counsel's August 11, 2003 letter, no mention was made by Plaintiff that such written contracts were not in Plaintiff's possession. Until McGirr's Supplemental Declaration, neither Defendant (or, for that matter, Plaintiff's counsel) nor the court were aware that Plaintiff's position was that no such contracts exist. In these circumstances, good cause exists to permit discovery beyond the literal allegations of the Complaint and extend to the subject matter of this action, *i.e.,* any questions regarding how Plaintiff came to incur any obligation, legal or otherwise, to supply a customer's order for prune juice regardless of whether such obligation arose as a result of a prior agreement to supply prune juice in particular quantities at particular prices, or were discretionary sales to fill future orders based on the amount of the orders and Plaintiff's then capacity to fill such orders. While Plaintiff contends that the agreement at issue between the parties is "not a requirements contract," Plaintiff's Response at 9, Mr. McGirr's statement implies otherwise:

> ... we do not have unlimited storage space for finished goods, we do not over-produce any single category of juice and keep it in the warehouse until some customer orders it. This is as true for prune juice as for any other juice.

McGirr February 2003 Declaration ¶ 38.

If, as Mr. McGirr states, Plaintiff does not manufacture prune juice in any particular amount with which to fill projected future orders, then it must be the fact that such production is done in quantities to fill specific orders previously received from customers. Such latter orders, if accepted by Plaintiff, constitute contracts of sale for the prunes to be shipped by Defendant and thus the contract between Plaintiff and Defendant could constitute a contract to satisfy Plaintiff's manufacturing and sale requirements. As noted, Discussion, *supra,* at 12, n. 4, the Complaint makes repeated allegations regarding Plaintiff's requirements for prunes. Defendant's Interrogatory and Document Request Nos. 5 therefore seeks information which is reasonably calculated to provide a factual basis for Plaintiff's contention that as a result of Defendant's abuse of its market power it incurred significant damages.

Nor is there any merit in Plaintiff's belated effort to avoid providing the requested documents constituting Plaintiff's customer contracts by claiming such contracts do not exist. First, Document Request No. 5 demands production of *"all* documents comprising plaintiff's contracts with its customers."

Plaintiff's Response at 4 (emphasis added). Contrary to the assertions in McGirr's Supplemental Declaration, Ms. Tharp, Plaintiff's Vice President for Manufacturing testified, at her deposition in December 2002, that there were such contracts and that Defendant's conduct did indeed therefore "force" Plaintiff to buy prunes from available market sources. Exhibit A to Defendant's Motion at 120–21. Carefully read, Mr. McGirr's two declarations are not entirely inconsistent on this score. McGirr's latest recitation of how Plaintiff conducts its sales reveals that the contractual sales agreements, sought by Defendant, between Plaintiff and its private label customers are in the form of sales orders by e-mail and faxes received by Plaintiff from Plaintiff's customers and invoices issued by Plaintiff. Defendant's Document Request No. 5 requests *all* documents; thus, to the extent copies (including electronic storage) of such e-mails messages, faxes, and invoices are within Plaintiff's control, they should be produced. Fed.R.Civ.P. 34(a). Plaintiff does not state specifically such documents are unavailable to it, and it would be remarkable that a large manufacturer would conduct its business without a system for documenting its sales to facilitate applicable accounting, audit, banking, and collection requirements.

Plaintiff's arguments in opposition to Defendant's requests amount to telling Defendant how to conduct its defense. Defendant is entitled to learn for itself the basis, if any, for Plaintiff's unfair competition claim and, for that matter, Plaintiff's other contract claims. Plaintiff's efforts to deflect Defendant's requests by defining the issues to suit its own purpose of non-production cannot be countenanced. As such, Plaintiff's objections to Defendant's requests based on lack of relevance, overbreadth and burdensomeness are overruled, and Plaintiff shall answer fully Interrogatory No. 5 and provide all documents responsive to Document Request No. 5.

The court notes that Defendant, by letter dated August 20, 2003, has requested sanctions. However, as no sanctions, including costs, were sought in Defendant's motion, the court will not entertain such request at this time. Therefore, any request by Defendant for sanctions, available to a prevailing party pursuant to Fed.R.Civ.P. 37, shall be filed by Defendant *within 10 days of service of this Decision and Order.* Plaintiff shall file its response *within 10 days after service of such motion;* Defendant may reply *within five days thereafter.* Further oral argument shall be at the court's discretion.

## CONCLUSION

Based on the foregoing, Defendant's motion (Doc. No. 13) is GRANTED. Plaintiff shall serve the requested answer to Interrogatory No. 5, and provide copies of all documents responsive to Document Request No. 5 *within 20 days of this Decision and Order.*

SO ORDERED.